IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRIAN K. RASCON,

        Petitioner,

v.                                                     CV 12-0036 JAP/WPL

JAMES LOPEZ, *Warden,*
*Penitentiary of New Mexico*,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

While incarcerated at Southern New Mexico Correctional Facility ("SNMCF"), Brian K. Rascon was charged with assisting in the murder of a fellow inmate by serving as a look-out. Disciplinary Packet, attached as Appendix 1, at 1 (hereinafter "App. 1"). A disciplinary hearing was conducted, and the hearing officer found Rascon guilty and recommended sanctions including three hundred days of disciplinary confinement and the forfeiture of all good time credits. *Id.* at 5. Now before me is Rascon's petition pursuant to 28 U.S.C. § 2241 contesting these sanctions based on alleged violations of due process in the administrative proceedings. (Doc. 1.) This matter has been referred to me to make findings of fact and to recommend an ultimate disposition. (Doc. 3.) Having reviewed the pleadings, the relevant law, and otherwise being fully advised, I recommend that the petition be denied.

### Factual and Procedural Background

On the evening of June 16, 2007, Freddie Sanchez, an inmate at SNMCF, was murdered. Guards found his body on the cot in his cell the next day, and the medical examiner determined that

the cause of death was ligature strangulation. App. 1 at 2. Anthony Romero, a Security Threat Intelligence Unit Administrator with the New Mexico Department of Corrections ("NMCD"), investigated the murder. *Id.* at 1. As part of this investigation, Romero conducted numerous interviews and collected other evidence. *Id.* Based on information from more than one confidential source, Romero concluded that Sanchez was murdered by three inmates and that Rascon was a look-out who stood outside Sanchez's cell door in case the three committing the murder needed assistance. *Id.* On that basis, NMCD administratively charged Rascon with murder. *Id.*

Rascon's administrative hearing occurred on July 27, 2007 before hearing officer Vistula Curry. *Id.* at 7-8. In preparation for the hearing, Rascon submitted five proposed questions that he wanted to ask Correctional Officers Saenz, Carillo, and Mintz as well as the duty officers at SNMCF on the night of the murder. *Id.* at 13. These questions essentially asked why Sanchez's body was not discovered until over sixteen hours after his death and why his door was open. *Id.* He submitted thirteen proposed questions that he wanted to ask Romero. *Id.* at 14-17. Through these questions, Rascon sought information regarding the confidential informants and their reports, the officers' compliance with NMCD policies, the physical evidence including surveillance recordings, and the institutional counts between the time of Sanchez's death and the time his body was discovered. *Id.* He also requested the production of all camera surveillance, a summary of the confidential information, confidential informant identifier information, all other physical evidence proving his involvement, the count slips from the time of Sanchez's death to the time his body was discovered, and a copy of the chain of evidence. *Id.* at 19-21, 23.

The hearing officer wrote a response to each of the proposed questions and requests for production, though no information was actually provided in response to any of Rascon's

submissions. *Id.* at 13-15, 21, 23. It is not clear when Rascon received or heard these responses.[1] All of the questions for the correctional officers were denied on the following bases: (1) they were already answered; (2) the correctional officers did not have knowledge; or (3) the information was irrelevant. *Id.* at 13. The questions proposed for Romero were all denied because: (1) the information sought was cumulative; (2) the questions were irrelevant; (3) Romero did not have knowledge; (4) the information sought could be used to identify confidential sources; or (5) the question was argumentative. *Id.* at 14-15. Each of Rascon's requests for production was denied because: (1) the evidence was already provided, did not exist, or would be provided at the hearing; or (2) the evidence and documentation was irrelevant or not used in rendering the decision. *Id.* at 21, 23.

The hearing was tape recorded and summarized by the hearing officer. Rascon did not request the assistance of a staff member or inmate. *Id.* at 7. He did indicate that he wanted to call Correctional Officers Saenz, Carrillo and Mintz as well as Romero as witnesses. *Id.* Because each of his proposed questions was denied, it is unclear whether or not the witnesses actually appeared. *See id.* During the hearing, Rascon denied the charge and focused on the fact that he lived two doors down from Sanchez so easily could have been seen near the crime scene. *Id.* The hearing officer inquired whether there were any considerations of which she should be aware, and Rascon pointed to his lack of violent history throughout his ten years of incarceration. *Id.* at 8.

A few weeks after the hearing, on August 9, 2007, the hearing officer found Rascon guilty of the administrative charge. *Id.* at 5. She based her decision on Romero's written report dated July

---

[1] The tape recording of the hearing, which the Court requested (Doc. 9), begins after the hearing is already in progress. During the ten minutes of the hearing that was made available to the Court, Rascon's questions and the hearing officer's responses thereto are not discussed beyond the hearing officer stating that all of the proposed questions for witnesses were denied.

5, 2007, the fact that Rascon was at the scene and able to move around in the unit at the time of the murder, the confidential information, and the death report confirming that Sanchez was strangled. *Id.* Based on the finding of guilt, the hearing officer recommended sanctions of 300 days of disciplinary segregation and the forfeiture of all good time. *Id.* These sanctions were approved and imposed on August 10, 2007. *Id.*

Following the decision, Rascon appealed within the NMCD. He appealed to the Warden, arguing that disciplinary policies were not followed, that the decision was not based on evidence, that the punishment was excessive and that new evidence or witnesses would change the decision. *Id.* at 27. Warden George Tapia denied the appeal on October 9, 2007, finding that there was substantial compliance with the policies and that Rascon offered no new evidence or witnesses on his behalf. *Id.* at 30.

After his administrative appeal was denied, Rascon filed a habeas corpus petition with the state district court. (Doc. 8 Ex. B.) The court consolidated his habeas petition with the petitions of four other inmates who were convicted of administrative charges related to Sanchez's murder. (*See* Doc. 8 Exs. H, I, & L.) The court denied all of the habeas petitions, concluding that NMCD followed its policies and provided due process in administering the disciplinary process. (Doc. 8 Ex. L at 2.) Specifically, the court concluded that the confidential information was reliable by a preponderance of the evidence. (*Id.*) The court also found that Rascon's contention that he should have been allowed to ask about the number of institutional counts and about the confidential informants lacked merit because NMCD's decision to deny the requests was reasonable. (*Id.* at 3-4.) The court indicated that the question regarding institutional counts was irrelevant because the time period during which Sanchez was murdered was clear from the videotape and medical report. (*Id.* at 3.) As

to the questions related to the confidential informants, the court stated that such information could easily threaten the safety and security of specific inmates and the institution. (*Id.*) Rascon petitioned for a writ of certiorari from the New Mexico Supreme Court. (Doc. 8 Ex. N.) His petition was summarily denied. (Doc. 8 Ex. O.)

In the application before this Court, Rascon asserts that the state district court erred in denying him relief. (Doc. 1 at 11.) Specifically, he argues that the hearing officer failed "to provide assistance in asking questions for preparing a defense and . . . to investigate [his] . . . request for evidence." (*Id.*) He complains that he was not permitted to call or question witnesses and that he was not provided with documents that he requested. (*Id.* at 11-12.) He further argues that NMCD policies created a liberty interest, which the hearing officer violated in her determination. (*Id.* at 15.)

### STANDARD OF REVIEW

When a prisoner wishes to challenge the execution of his sentence, rather than his conviction or the imposition of a sentence, 28 U.S.C. § 2241 provides the Court with jurisdiction. *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (citations omitted) ("Petitions under § 2241 are used to attack the execution of a sentence, in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of a conviction and sentence."). However, the text of § 2241 provides the federal courts with comparatively little guidance on how to evaluate these claims. Other provisions of the statutes governing writs of habeas corpus clearly define the applicable standard of review and various jurisdictional requirements. For example, 28 U.S.C. § 2254, which provides federal courts with jurisdiction over challenges by state prisoners to

the fact of their confinement,[2] includes an exhaustion requirement and a specific, deferential standard of review. 28 U.S.C. § 2254(b) & (d).

Because § 2241 lacks such guidance, many circuits have considered whether to apply the standard of review and other limitations included in § 2254 to habeas petitions brought under § 2241. The majority of circuits have determined that the standards of § 2254 apply to petitions challenging the execution of a sentence, though they have followed two distinct lines of reasoning to reach that conclusion.

One group has found that challenges to the execution of a sentence by a state prisoner are properly brought not under § 2241 but under § 2254. *See White v. Lambert*, 370 F.3d 1002, 1005-10 (9th Cir. 2004); *Crouch v. Norris*, 251 F.3d 720, 722-23 (8th Cir. 2001); *Walker v. O'Brien*, 216 F.3d 626, 632-33 (7th Cir. 2000). These courts have analyzed the first clause of § 2254 "as directing a status inquiry into the source of the petitioner's custody, and not an inquiry into the target of the petitioner's challenge." *White*, 370 F.3d at 1007-08 (citations omitted). Thus, these courts conclude that § 2254 implements "the general grant of habeas corpus authority found in § 2241, as long as the person is in custody pursuant to the judgment of a state court, and not in state custody for some other reason . . . ." *Id.* at 1005.

The other group considers § 2241 and § 2254 as covering the same situation. *See Medberry v. Crosby*, 351 F.3d 1049, 1058-1062 (11th Cir. 2003); *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 277-79, 279 n.4 (2d Cir. 2003); *Coady v. Vaughn*, 251 F.3d 480, 484-85 (3d Cir. 2001). They

---

[2] The first clause of § 2254 grants the federal courts jurisdiction to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

then apply the well-established canon of statutory construction that when two statutes cover the same situation, the more specific one takes precedence. *See Coady*, 251 F.3d at 484 (citations omitted). Because § 2254 is the more specific of the two statutes, § 2241 cannot be applied when "doing so would undermine limitations created by a more specific provision." *Id.* (quoting *Varity v. Howe*, 516 U.S. 489, 511 (1996)).

Unlike our sister circuits, the Tenth Circuit has crafted a muddled amalgamation of the limitations applicable to § 2241 petitioners, and it stands alone in the minority. *See Medberry*, 351 F.3d at 1062 n.8. In our circuit, some limitations of § 2254 apply, but others do not. In considering the issue of exhaustion, the Tenth Circuit has held that a § 2241 petitioner, just like a § 2254 petitioner, is required to exhaust all available state remedies. *Magar v. Parker*, 490 F.3d 816, 818-19 (10th Cir. 2007); *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)). However, when it comes to the standard of review applicable to a § 2241 petition, the court has broadly held that "[§] 2241's applicability greatly affects our standard of review in that the deference normally accorded state court judgments under § 2254 does not apply. Instead, we review habeas claims made pursuant to § 2241 . . . de novo."[3] *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007); *see also Bogue v. Vaughn*, 439 F. App'x 700, 703 (10th Cir. 2011) (unpublished).

It seems somewhat contradictory to require § 2241 petitioners to exhaust all state remedies while simultaneously refusing to accord the state determination any deference. The Tenth Circuit

---

[3] In a prior published decision, the Tenth Circuit stated that deference would be accorded to a state court determination of the federal constitutional issue despite the fact that the petition would be analyzed under § 2241. *Henderson v. Scott*, 260 F.3d 1213, 1215 (10th Cir. 2001) (citations omitted). The more recent decision by the court in *Walck* did not mention *Henderson*.

adopted this position without discussion of this conflicting impact or the contrary holdings of our sister circuits. Nonetheless, because I am bound to apply the law of this circuit in rendering my recommendations, I will review Rascon's petition *de novo*.

In addition, Rascon is a *pro se* litigant. Accordingly, I construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby, Connor, Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

## ANALYSIS

The Fourteenth Amendment requires the State to provide citizens with due process of law when it will deprive them of a liberty interest. "Although their due process rights are defined more narrowly, that guarantee applies to prisoners as well." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). Thus, before a prisoner is subjected to disciplinary actions that impose an "atypical and significant hardship" or inevitably alter the duration of confinement, he is entitled to due process. *Sandin v. Connor*, 515 U.S. 472, 484, 487 (1995). That does not mean that prisoners are entitled to "the full panoply of rights due a defendant" in a criminal prosecution. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The process due to prisoners before prison administrators take actions affecting protected liberty interests include: (1) advance, written notice of the charges; (2) a limited

opportunity to call witnesses and present documentary evidence in defense; and (3) a written statement by the finder of fact explaining the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454 (1985). The decision of the hearing officer must be supported by some evidence. *Id.*

1.    *Liberty Interest*

Before reaching the merits of Rascon's due process claim, I must determine that he had a valid liberty interest. Rascon asserts liberty interests based on both his loss of good time credits and his disciplinary confinement. (Doc. 1 at 1.) "Generally, because they contest the fact or duration of custody, prisoners who want to challenge their convictions, sentences or administrative actions which revoke good-time credits, or who want to invoke other sentence-shortening procedures, must petition for a writ of habeas corpus." *Boyce v. Ashcroft*, 251 F.3d 911, 914 (10th Cir. 2001), *vacated as moot*, 268 F.3d 953 (10th Cir. 2001) (citation omitted). But "[p]risoners who raise constitutional challenges to other prison decisions – including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, *e.g.* conditions of confinement, must proceed under [42 U.S.C. § 1983]." *Id.*

The Tenth Circuit has stated that "'[i]t is well settled' that an inmate must be afforded due process prior to the revocation of his earned credits." *Wilson v. Jones*, 430 F.3d 1113, 1120 (10th Cir. 2005) (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996)). Because Rascon has asserted at least one constitutionally protected liberty interest – earned good time credits – I need not determine whether his placement in disciplinary confinement for 300 days was an "atypical and significant hardship" such that due process protections were required. SNMCF was required to provide due process protections in relation to administratively charging and convicting Rascon of

9

murder.

2.    *Right to Present Evidence in Defense*

Rascon's complaint relates to the second of the due process requirements – the right to present evidence in his defense. But it is important to note that a prisoner's right to call witnesses and to present evidence in his defense is far from unfettered. Instead, prison administrators have flexibility in determining whether requested witnesses should be called, whether certain questions should be permitted, and whether the prisoner may access certain documentary evidence. In *Wolff*, the Supreme Court explained this flexibility in detail:

> It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

418 U.S. at 566.

Based on the holding in *Wolff*, the Tenth Circuit has determined that courts should ordinarily defer to the expert judgment of prison officials in evaluating prisoner requests for witnesses and evidence because "this decision involves many complex considerations within the special province of corrections officers . . . ." *Ramer v. Kerby*, 936 F.2d 1102, 1104-05 (10th Cir. 1991) (citing *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974)). The court recognized that such requests could be denied based on "legitimate penological concerns including, but not limited to, safety or correctional goals, expense, staffing requirements throughout the institution, and the danger of

harassment . . . ." *Id.* at 1104. Moreover, requests should be denied when the official determines that "the staff members' testimony would be irrelevant, cumulative, or otherwise unnecessary for the committee to come to a fair resolution of the matter." *Id.*; *see also Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (citation omitted) ("[A] [BOP] hearing officer does not violate due process by excluding irrelevant or unnecessary testimony."). The only absolute requirement that has been set by the Tenth Circuit is that prison officials must evaluate the request on an individualized basis. *Id.* at 1105.

Here, the hearing officer reviewed each of Rascon's requests. In fact, the hearing officer provided individualized and often detailed written responses to each request. Because the hearing officer is best positioned to weigh the needs of the facility against the necessity for Rascon's requested witnesses and documents, I find that the denial of Rascon's requests did not constitute a due process violation. The hearing officer considered Rascon's proposed questions and requests one by one and determined that they were cumulative, irrelevant, or contrary to legitimate penological goals. After considering the reasons offered by the hearing officer, in light of the totality of the circumstances, I find that the hearing officer's determinations were not objectively unreasonable and should be accorded deference. Her denial of Rascon's requests did not, therefore, violate Rascon's right to due process in the prison administrative hearing.

Even had the denials been in error, though, harmless error review applies to "errors made by prison officials in denying witness testimony at official hearings . . . ." *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006). The interviews and other evidence in the record and in the documents submitted for *in camera* review support the hearing officer's determination regarding Rascon's involvement in Sanchez's murder. Nothing in these documents suggests that the testimony

11

and evidence that Rascon sought would have aided in his defense. As such, any alleged error was harmless. *See id.*

3.      *Failure to Follow NMCD Regulations*

Rascon also asserts that the hearing officer committed a due process violation by failing to adhere to NMCD policies. However, failure to follow administrative regulations or policies does not constitute a constitutional violation. *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)) ("[F]ailure to adhere to administrative regulations does not equate to a constitutional violation."); *see also Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (citations omitted) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim under § 1983."); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process . . . ."). Thus, Rascon's due process rights were not violated by the hearing officer's alleged failure to follow NMCD policies.

## RECOMMENDATION

Rascon was entitled to limited due process protections in the administrative proceedings that resulted in his conviction for murder. Though his proposed questions for witnesses and requests for evidence were denied, the hearing officer made an individualized determination that each request was cumulative, irrelevant, or contrary to legitimate penological goals. Cognizant of the deference that must be accorded to these determinations, I find that Rascon was afforded due process of law in the administrative process. Furthermore, any violation of NMCD policies by the hearing officer does not constitute an infringement on Rascon's right to due process. Accordingly, I recommend that

Rascon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be denied, that this cause be dismissed with prejudice, and that a certificate of appealability not be issued. *See* 28 U.S.C. § 2253(c).

THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge